IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| **KIRK PETERSON, M.D.**, | Case No. 4:24-cv-00371-RGE-SB |
| Plaintiff, | |
| v. | |
| **DES MOINES UNIVERSITY OSTEOPATHIC MEDICAL CENTER, and KARLI SMITH, HANNAH GUSTAFSON, ERIKA LINDEN and SARAH PARROTT M.D., individually and in their corporate capacities,** | **PLAINTIFF'S COMPLAINT AND JURY DEMAND** |
| Defendants. | |

**COMES NOW** the Plaintiff, Kirk "Pete" Peterson, and, pursuant to Rule 15(a)(1), hereby amends his First Amended Petition and Jury Demand by submitting the following Complaint and Jury Demand against the Defendants, Des Moines University Osteopathic Medical Center**,** Karli Smith, Hannah Gustafson, Erika Linden and Sarah Parrott D.O**.**., individually and in their corporate capacities, states as follows:

## VENUE & JURISDICTION

1. The unlawful acts alleged below were committed in Polk County, Iowa

2. The amount in controversy exceeds the jurisdictional requirements of the United States District Court for the Southern District of Iowa.

## PARTIES

3. Plaintiff Kirk "Pete" Peterson M.D. is, and was at all times material hereto, a citizen and resident of Huxley, Story County, Iowa and is a medical doctor licensed to practice medicine in the state of Iowa.

4. Upon information and belief, Des Moines University Osteopathic Medical Center ("DMU") is an Iowa non-profit corporation, with its principal place of business in West Des Moines, Polk County, Iowa.

5. Upon information and belief, Karli Smith, and was at all times material hereto, a citizen and resident of Des Moines, Iowa, and a student at Des Moines University who served in a clerkship for three days in August 2022 at the clinic in Huxley, Iowa, where Plaintiff practiced medicine.

6. Upon information and belief, Hannah Gustafson, was at all times material hereto, a citizen and resident of Des Moines, Iowa, and a student at Des Moines University who served a clerkship in December, 2021, at the clinic in Huxley, Iowa, where Plaintiff practiced medicine. Ms. Gustafson is now a resident of Johnston City, Tennessee.

7. Upon information and belief, Erika Linden ("Linden") is, and was, at all times material hereto, a citizen and resident of Des Moines, Polk County, Iowa and served as the Chief Compliance Officer for Defendant DMU.

8. Upon information and belief, Sarah Parrott D.O. ("Parrott") is, and was at all times material hereto, a citizen and resident of Des Moines, Polk County, Iowa and the Chairperson of the Department of Osteopathic Clinical Medicine.

## FACTUAL BACKGROUND

9. Plaintiff repleads the allegations set forth above as fully set forth herein.

10. Dr. Peterson began as a medical doctor practicing medicine in Huxley, Iowa on July 1st, 1997, at the Huxley Medical Clinic. He then signed a contract with Central Iowa Hospital Corporation and Physicians on December 1, 1998, and continued practicing in the same Huxley clinic.

11. During much of his tenure since 1997, DMU referred Dr. Peterson their medical students to him for clerkships.

12. Effective May 11, 2017, DMU and Dr. Peterson entered into a Clinical Training Agreement which set the terms for Dr. Peterson's preceptor relationship with DMU. The agreement provided, in part, as follows:

> The parties agree to comply with Titles VI and VII of the Civil Rights Act of 1964, *Title IX of the Education Amendments of 1972*, Section 504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act Amendments Act, the Age Discrimination Act of 1975, *and the related regulations to each*. There shall be no discrimination on the basis of race, ethnicity, national origin, religion, creed, color, sex, age, veteran status, sexual orientation, gender identity, pregnancy, or handicap in either the selection of Program Participants for participation in the Program, or as to any aspect of the clinical training…(emphasis added).

See Exhibit "A" attached hereto.

13. DMU adopted regulations which implemented Title IX and applied to all "students, faculty and staff."

14. The DMU regulations further provided that a Complainant must be "participating in or attempting to participate in a DMU Education Program or Activity."

15. The DMU regulations provided various other protections for persons accused of sexual harassment, including the prohibition against filing false complaints.

16. The Clinical Training Agreement was in effect in August of 2022.

17. On November 15, 2014, Ms. Linden conducted a seminar for preceptors and clinical instructors of DMU with the objective of identifying the prohibitions against gender-based discrimination Title IX that extended to preceptors for healthcare students.

18. Prior to August of 2022, the medical students whom Dr. Peterson took on as students, including Gustafson, universally commended him on the valuable educational

experience they received. From 1997 to August 2022, Dr. Peterson received no complaints from DMU about any issues regarding the DMU students who rotated in his office.

19. Because of his long-term commitment to educating DMU students, Dr. Peterson was appointed to the faculty at DMU on April 1, 2014 as an Adjunct Associate Professor of Family Medicine..

20. In August of 2022, Smith served a clerkship at the Huxley Clinic under Dr. Peterson, but failed to return after the third day.

21. On August 11, 2022, Smith and Gustafson jointly prepared false statements claiming that they had experienced sexual harassment while serving clerkships at the Huxley Clinic and blaming Dr. Peterson. Those statements were published to Linden, Parrot and others.

22. Linden and Parrott interviewed Smith and Gustafson, and without challenging the truth of their statements, prepared summaries of the complaints which added additional allegations and were materially false.

23. Linden requested that Smith and Gustafson authorize her to publish to Unity Point, Dr. Peterson's employer, the summaries which she and Parrott had prepared.

24. Smith and Gustafson authorized Linden to publish the summaries which were materially false to Unity Point Clinics.

25. On or about August 22, 2022, Linden published to Unity Point Clinic, Dr. Peterson's employer copies of the summaries of the complaints by Smith and Gustafson, which were materially false.

26. Smith and Gustafson later recanted many of the complaints in their own summaries as well as the summaries which Linden and Parrott prepared.

27. Linden, Parrott, Smith and Gustafson knew that many of the allegations contained in the summaries were not true because they knew that the alleged conduct was not true and that the alleged conduct failed to meet the definition of sexual harassment, pursuant to Title IX and the definitions contained in DMU's policies (Linden 17, Parrott 26)[1].

28. Linden, Parrott and Smith all admitted in depositions taken in a parallel matter that the allegations contained in the complaints and summaries did not rise to the level of sexual harassment.

29. Despite his status as an Adjunct Associate Professor of DMU, no one from DMU, including Linden and Parrott, interviewed Dr. Peterson to determine whether the allegations of sexual harassment were true.

30. Instead, on August 25, 2022, DMU informed Dr. Peterson by letter that he would no longer be assigned students and terminated his contract. No explanation for this decision was provided.

31. The loss of assigned students caused Dr. Peterson to lose income from DMU and caused him significant emotional distress.

32. The false statements contained in the summaries from Smith and Gustafson caused Unity Point Clinic to terminate Dr. Peterson from his Associate Medical Director position which he had held for eight years.

33. The termination of Dr. Peterson from his Associate Medical Director position resulted in the loss of his annual income and bonus from that position.

## COUNT I: VIOLATION OF TITLE IX—DUE PROCESS
### (Peterson v. DMU)

34. Plaintiff repleads the allegations set forth above as if fully set forth herein.

---

[1] References in parentheses are to the depositions taken in the case of Peterson v Unity Point Clinic et al.

35. DMU is an educational institution which receives Federal financial assistance under 20 U.S.C. 1681, commonly known as "Title IX" and therefor is subject to the due process requirements of the statute and the corresponding regulations issued by the Department of Education.

36. DMU violated Dr. Peterson's right of due process under Title IX by terminating his role as a preceptor without allowing him notice of the complaints against him and an opportunity to respond to the allegations contained in those complaints.

37. As a proximate cause of the Defendant DMU's illegal conduct, Peterson has suffered damages, including damages for loss of income and emotional distress.

38. Defendant DMU acted with malice and/or reckless indifference to Peterson's rights and therefore he is entitled to punitive damages.

39. Plaintiff is entitled to equitable relief, including but not limited to reinstatement.

**WHEREFORE** the Plaintiff, Kirk "Pete" Peterson, respectfully prays that this Court enter judgment against the Defendant Des Moines Osteopathic Medical Center and award him damages, including compensatory relief, punitive damages, equitable relief, court costs and attorney's fees, all with interest as provided by law, and such other and further relief as the Court deems just and equitable.

### COUNT II: DEFAMATION
**(Peterson v. Smith and Gustafson)**

40. The Plaintiff repleads the allegations above as if fully set forth herein.

41. The Defendants Smith and Gustafson made statements to DMU which were false and defamatory *per se*.

42. The false statements Defendants Smith and Gustafson made to DMU included the following:

    a.    That Plaintiff had engaged in sexual harassment;

    b.    That Plaintiff showed Smith pictures of Heidi Klum on Yahoo News which were "topless" implying her breasts were showing.

    c.    That Plaintiff made inappropriate comments about pictures of patients in historic insane asylums;

    d.    That boob and penis jokes were told in the Huxley clinic by multiple employees up to ten times per hour;

    e.    That Plaintiff told Gustafson that her scrubs were "tight";

    f.    That Plaintiff told Gustafson he liked her necklace, implying he was looking at her breasts, and she stopped wearing necklaces during her rotation;

    g.    That Plaintiff pressured Gustafson to take a shot of tequila;

    h.    That Gustafson personally witnessed an employee stand near plaintiff's face, while he was on his knees in his office, and later that same day Plaintiff joked about an employee's body odor;

    i.    That Plaintiff told inappropriate and sexually oriented jokes.

    j.    That Plaintiff was a narcissist.

43.    The statements made by Defendants Smith and Gustafson were either false or defamatory *per se*.

44.    Smith and Gustafson knew that the statements they made to DMU were not true, specifically,

    a.    Smith admitted that she knew the standards for a claim of harassment and she admitted that her claim did not amount to one (Smith 122-123);

    b.    Both Smith and Gustafson admitted that they had only heard a few jokes and not up to ten per hour (Smith 137-138; Gustafson 75-76);

    c.    Between Smith and Gustafson, they could only remember one joke each which they claimed that Dr. Peterson had told;

    d.    Smith admitted that the picture of Heidi Klum which was labeled as "topless" did not in fact show her breasts (Smith 30);

    e.    Gustafson continued to wear necklaces during her rotation as shown in a photograph taken the last day (Gustafson 102);

    f.    Gustafson admitted that Dr. Peterson had not pressured her to take shots of tequila, and claimed another person present did so (Gustafson 73);

    g.    Gustafson admitted that she did not have a medical basis to make a determination of whether Dr. Peterson was a narcissist. (Gustafson 165-166)

45.    The statements made by Defendants Smith and Gustafson were made with malice and, therefore Plaintiff is entitled to punitive damages.

**WHEREFORE** the Plaintiff, Kirk "Pete" Peterson, respectfully prays that this Court enter judgment against the Defendants, Karli Smith and Hannah Gustafson and award him damages, including compensatory relief, punitive damages, court costs, with interest as provided by law, and such other and further relief as the Court deems just and equitable.

### COUNT III: DEFAMATION
### (Peterson v. DMU, Linden and Parrott)

46.    The Plaintiff repleads the allegations above as if fully set forth herein.

47.    The Defendants Linden and Parrott, acting as employees and agents of Defendant DMU, summarized the statements made by Smith and Gustafson in a way which made them false and defamatory *per se*.

48. The statements which Linden and Parrott summarized in a manner to make them false and defamatory *per se* included the following:

    a. That Plaintiff had engaged in sexual harassment;

    b. That Plaintiff showed Smith pictures of Heidi Klum on Yahoo News which were "topless" implying her breasts were showing;

    c. That Plaintiff made inappropriate comments about pictures of residents in historic insane asylums;

    d. That boob and penis jokes were told in Plaintiff's clinic by multiple employees up to ten times per hour;

    e. That Plaintiff told Gustafson that her scrubs were "tight";

    f. That Plaintiff told Gustafson he liked her necklace, implying he was looking at her breasts;

    g. That Plaintiff pressured Gustafson to take a shot of tequila;

    h. That Plaintiff joked about an employee's body odor; and

    i. That Plaintiff told inappropriate and sexually oriented jokes.

49. The statements summarized by Linden and Parrott were either false or defamatory *per se*.

50. DMU and Linden published the false and defamatory statements to third parties, including, but not limited to, Unity Point Clinic, the Plaintiff's employer.

51. Parrott published the statements to other persons within DMU.

52. The summaries published by DMU, Linden and Parrott were false and they knew they were false, specifically because:

        a.      Linden and Parrott admitted that the accusations made by Smith and Gustafson did not meet the criteria for a claim of sexual harassment (Linden p. 17; Parrott 26)

        b.      The accusation that there were penis and boob jokes up to ten times per hour did not seem reasonable to Linden (Linden 59-60).

        c.      The original statements submitted by Smith and Gustafson did not include several of the accusations that Linden and Parrott added to their summaries, including, but not limited to the frequency of jokes about boobs and penises and that Dr. Petersson had pressured her to do a shot of tequila.

53. The summaries prepared by DMU, Linden and Parrot were published with malice and or reckless disregard for the rights of Plaintiff and, therefore, he is entitled to punitive damages.

**WHEREFORE** the Plaintiff, Kirk "Pete" Peterson, respectfully prays that this Court enter judgment against the Defendants DMU, Linden and Parrott and award him damages, including compensatory relief, punitive damages, court costs, with interest as provided by law, and such other and further relief as the Court deems just and equitable.

### COUNT IV: DISCRIMINATION
### (Peterson v. DMU)

54. The Plaintiff repleads the allegations above as if fully set forth herein.

55. The Plaintiff is a man.

56. The Defendants Smith, Gustafson, Linden and Parrott are all women.

57. The Defendants Smith and Gustafson made statements which reflected a hatred and bias against men, and in particular older men. Specifically,

        a.      They referred to Plaintiff as a "mysoginist."

       b.    They referred to Plaintiff as "creep," a pejorative term meaning a man who is a sexual predator.

       c.    Smith admitted that she generally thought older men were more "assholy."

58.    The Defendants Linden and Parrott were biased towards women.

59.    Defendants Linden and Parrott acted as the *cats' paws* for Smith and Gustafson.

60.    DMU discriminated against Plaintiff by terminating his contract because of his sex.

61.    The Defendants DMU, Linden and Parrott discriminated against Plaintiff because of his sex by failing to properly investigate the accusations against him. In particular, Linden and Parrott failed to properly investigate the accusations,

       a.    By failing to challenge the truth of the statements made by Smith and Gustafson;

       b.    By failing to offer Plaintiff an opportunity to respond to the accusations made by Smith and Gustafson; and

       c.    By failing to hold an appropriate hearing before a neutral third party to determine the truth of the allegations against Plaintiff.

62.    The Defendant DMU discriminated against the Plaintiff because of his sex by failing to follow its internal procedures which required the University to give the Plaintiff notice of the charges against and a hearing at which he could contest those charges.

63.    The Defendants discriminated against the Plaintiff because of his sex in violation of 20 USC §1681.

64.    As a proximate cause of Defendants' illegal discrimination, Plaintiff has been damaged, including loss of income and emotional distress.

**WHEREFORE** the Plaintiff, Kirk "Pete" Peterson, respectfully prays that this Court enter judgment against the Defendants DMU, Linden and Parrot and award him damages for compensatory damages, punitive damages, court costs, with interest as provided by law, and such other and further relief as the Court deems just and equitable.

### COUNT V: BREACH OF CONTRACT
**(Peterson v. DMU)**

65. The Plaintiff repleads the allegations above, as if fully set forth herein.

66. Pursuant to the contract between the parties, each was required to abide by Title IX of the Education Amendments of 1972 and its related regulations.

67. By terminating Plaintiff's contract under the circumstances set forth above, DMU violated the terms of the Clinical Training Agreement by:

   a. Failing to follow a grievance procedure in violation of 34 CFR §106.45(b)(1)(i).

   b. Failing to give Dr. Peterson notice of the complaints filed by Smith and Gustafson in violation of 34 CFR §106.45(b)(2),

   c. Failing to fully and fairly investigate the allegations contained in the complaints violation of 34 CFR §106.45(b)(3),

   d. Failing to allow Dr. Peterson a live hearing before a neutral tribunal to contest the allegations in the complaints, in violation of 34 CFR §106.45(b)

   e. Failing to provide for an objective evaluation of all evidence, in violation of 34 CFR §106.45(b)(1)(ii)

   f. Failing to presume that Dr. Peterson was not responsible for the alleged conduct until a determination regarding responsibility is made at the conclusion of the grievance process, in violation of 34 CFR §106.45(b)(1)(iv);

    g.    Failing to allow Dr. Peterson an opportunity to appeal any determination, in violation of 34 CFR §106.45(b)(8),

    h.    Failing to dismiss the allegations against Dr. Peterson because they did not meet the definition of sexual harassment in violation of 34 CFR §106.45(b)(3), and

    i.    Removing him on an emergency basis when there was an insufficient basis to do so and without providing Dr. Peterson and opportunity to challenge the determination in violation of 34 CFR §106.44(c).

68.    As a proximate cause of DMU's breach of the contract between the parties, the Plaintiff has been damaged.

**WHEREFORE** the Plaintiff, Kirk "Pete" Peterson, respectfully prays that this Court enter judgment against the Defendant DMU and award him damages for compensatory losses, reinstatement, and other equitable relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby requests a trial by jury in this matter.

Respectfully Submitted,

By: /s/ *Mark D. Sherinian*
Mark D. Sherinian  AT0007173
MARK D. SHERINIAN P.C.
P.O. BOX 41052
Des Moines, IA 50311
Telephone:  (515) 250-4434
Email: sherinianlaw@msn.com
ATTORNEY FOR PLAINTIFF

Copy to:

Emily S. Hildebrand Pontius
epontius@fredlaw.com
Olivia N. Norwood
onorwood@fredlaw.com
111 East Grand Avenue, Suite 301
Des Moines, IA 50309-1972

The undersigned hereby certifies that this document was served on the Defendants' counsel by filing the same with the CM/ECF system for the Federal District Court for Southern District of Iowa on the 13th day of November, 2024 and by emailing the document to them at their email addresses set forth above.

/s/Mark D. Sherinian